IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WAYNE V. WILLIAMS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PWG-21-18 |
| M.D. ASRESAHEGN GETACHEW, and MEDICAL STAFF PERSONNEL, N.B.C.I., Defendants. | * * | |

***

**MEMORANDUM OPINION**

Self-represented plaintiff Wayne Williams is an inmate incarcerated at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland. He alleges in his Complaint filed pursuant to 42 U.S.C. § 1983 that he was provided constitutionally inadequate medical care in violation of the Eighth Amendment. ECF No. 1. Defendant Dr. Asresahegn Getachew filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. ECF No 13.[1] In response, Mr. Williams filed three Declarations (ECF Nos. 18, 19, and 22-1), a Motion to Dismiss or in the alternative for Summary Judgment (ECF No. 20), and a motion styled as a "Motion for Judgment on a Particular Pleading" (ECF No. 22), which appears to further respond to Dr. Getachew's Motion to Dismiss.[2] For the reasons explained below, I construe Dr. Getachew's Motion as a Motion for Summary Judgment, which will be GRANTED. Mr. Williams's Motion to Dismiss or

---

[1] Mr. Williams names "medical staff personnel" as a defendant, but he did not identify those individuals or make any particular claims against them. As described below, Mr. Williams will be permitted to amend his complaint to identify and state a claim against these defendants.

[2] Prior to these filings, Mr. Williams filed correspondence indicating that he had received the Court's Rule 12/56 notice (ECF No. 15), but that he did not receive a copy of Defendant's motion. ECF Nos. 16-17. Based on Mr. Williams's subsequent filings, it appears that he did, in fact, receive a copy of the motion.

in the alternative for Summary Judgement, and his Motion for Judgment on a Particular Pleading will be DENIED.

## Background

Mr. Williams filed this action against Dr. Getachew as well as unnamed "Medical Staff Personnel" at NBCI. ECF No. 1. The Complaint does not contain any allegations against the unidentified medical personnel. *Id.* Mr. Williams moved to file an amended complaint, which would add Nurse Practitioner ("NP") Holly Hoover, R.N., K. Coleman, and NCBI's eye clinic doctor as defendants (ECF No. 5), but the motion was denied because Mr. Williams did not identify any facts or allegations against the proposed additional defendants (ECF No. 6).[3]

Mr. Williams has a history of serious medical problems, including stroke, endocarditis, bacteremia, discitis, and hernias as outlined in Defendant's Declaration and Memorandum of Law.[4] ECF Nos. 13-1 at 2-11 and 13-2 at 4-6. Here, Mr. Williams limits his Complaint to three issues: 1) his need for a single occupancy cell due to his serious medical needs; 2) his need for hernia surgery; and 3) his need for pain medication for his "spinal disease." ECF No. 1 at 7. The bulk of the Complaint addresses Mr. Williams's demand for a single cell. *See id*. His demand for hernia surgery and medication are stated in a single sentence at the end of the Complaint. *Id.* at 7.

### A. Single Cell Claim

On June 25, 2020, Mr. Williams was found on the floor of his cell, screaming in pain, and confused. ECF No. 13-3 at 79-80. Prison personnel called 911, and Mr. Williams was transported

---

[3] Although NP Hoover was not added as a defendant in this action, Mr. Williams describes in detail various allegations against her and others in his filings. ECF Nos. 18, 19, 20, and 22.

[4] Defendant describes Mr. Williams's medical background at length and includes exhibits totaling over 600 pages of medical records. ECF Nos. 13-1 at 2-11; 13-2 at 4-6; and 13-3 – 13-9. The Court finds it unnecessary to reiterate the details of Mr. Williams's medical challenges, except to the extent that they relate directly to Mr. Williams's stated claims.

to the hospital. *Id*. Mr. Williams was admitted to the hospital with various diagnoses including embolic cerebrovascular accident, aortic valve endocarditis, sepsis, bacteremia, thrombocytopenia, and possible cholangitis. ECF No. 13-9 at 103. He was treated with antibiotics and underwent a litany of tests and treatments over the course of several weeks. *Id*. at 104–105. On July 16, 2020, Mr. Williams underwent surgery for aortic valve replacement and coronary artery bypass. *Id*. at 105-106. He was then discharged to the Western Correctional Institution infirmary on July 23, 2020, where he spent over a month recovering from heart surgery and being treated with intravenous antibiotics for discitis. ECF No. 13-7 at 21; *see also* ECF Nos. 13-4 at 9-100, 13-5, 13-6, and 13-7 at 1-20. Upon his discharge from the infirmary on August 27, 2020, Mr. Williams was issued a thoracic brace and given medical orders for a bottom bunk and a four-wheeled walker. ECF No. 13-7 at 18.

On September 2, 2020, Dr. Getachew saw Mr. Williams via telemedicine for a provider visit. ECF No. 13-7 at 24. Dr. Getachew noted that Mr. Williams used a lumbosacral brace and wheelchair for ambulation, but that he was able to stand and walk to the bathroom. *Id*. At that time, Mr. Williams was housed in a single occupancy cell. *Id*. Dr. Getachew recommended that Mr. Williams return to the infirmary, but Mr. Williams preferred to stay in his housing unit. *Id*. Dr. Getachew further recommended that Mr. Williams follow up with neurosurgery, and prescribed Ultram for his back pain. *Id*. Dr. Getachew issued a medical order for Mr. Williams to use a wheelchair for moving long distances and to be housed in a handicap, single occupancy cell for three months. ECF No. 13-8 at 39.

On December 29, 2020, Mr. Williams saw Nurse Practitioner Hoover and requested a medical cell because "he would just like to have one." ECF 13-7 at 69. She found no medical indication for a medical cell and noted that Mr. Williams was currently prescribed a bottom bunk and bottom

tier. *Id*. Mr. Williams again requested a single occupancy cell during a provider visit with Joginder Mehta, M.D., who also explained that it was not medically required. ECF No. 13-7 at 79.

### B. Medication Claim

On October 12, 2020, Mr. Williams told Nurse Practitioner Hoover that his medication was no longer controlling his pain at night, and requested an increase in the dosage. ECF. 13-7 at 49. NP Hoover increased the nighttime dosage per Mr. Williams's request and renewed his prescription for Ultram through January 12, 2021. *Id*. However, on December 24, 2021, NP Hoover reviewed Mr. Williams's lab results, which indicated that no Ultram was detected. *Id*. at 67. NP Hoover therefore discontinued the prescription for Ultram. *Id*. On December 29, 2020, Mr. Williams requested a refill for Ultram, but NP Hoover declined to prescribe it due to the lab results revealing that no Ultram was detected. *Id*. at 69. On February 23, 2021, Mr. Williams saw Comfort S. Ngwa, R.N. and requested stronger pain medication and complained that his walker had been taken away. ECF No. 13-7 at 86. Nurse Ngwa recommended an appointment with a provider to discuss these issues. *Id*.

### C. Hernia Claim

Mr. Williams has filed numerous sick call requests complaining of hernia pain beginning in at least May of 2019. ECF Nos. 13-9 at 55-57; *see also id*. at 29, 36, 37, and 41. Based on records submitted by Dr. Getachew, it was not until September 23, 2020, that any action beyond supplying hernia belts was taken to address the issue. ECF No. 13-7 at 34. On September 23, 2020, Defendant Dr. Getachew saw Mr. Williams via telemedicine and cleared him for surgery to repair a hernia and excise and biopsy a mass on his left buttock.[5] ECF No. 13-7 at 34. On September 24,

---

[5] Mr. Williams's sick call requests in 2019 include complaints about the mass, but he does not mention this issue in his Complaint. *See*, ECF No. 13-9 at 55-57,

2020, NP Hoover requested a cardiac consultation in preparation for surgery. *Id*. at 37, 40. On October 27, 2020, Dr. Benhur B. Mohammed, M.D. placed a second request for a cardiac consult prior to surgery. *Id*. at 55. On December 9, 2020, Mr. Williams saw William Beeman, R.N. and requested a new hernia belt, which was ordered. *Id*. at 66.

On February 3, 2021, NP Hoover made another request for general surgery to repair Mr. Williams's hernia and biopsy the mass on his left buttock. ECF No. 13-7 at 83. NP Hoover noted that Mr. Williams had previously been cleared for surgery, but the prior surgeon was no longer accepting Department of Corrections patients. *Id*.

On March 15, 2021, a general surgeon evaluated Mr. Williams and recommended laparoscopic surgery to repair his hernias and excise the left thigh mass. ECF No. 13-7 at 87. Dr. Getachew then made the request for surgery consistent those recommendations. *Id*. Mr. Williams finally underwent surgery to repair two hernias on April 20, 2021. ECF No. 13-9 at 130-132.

**Standard of Review**

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). To survive a motion to dismiss, a plaintiff must establish "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. The court need not accept unsupported legal allegations, *see Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,*

478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

When reviewing a motion to dismiss, well-pleaded facts as alleged in the complaint are accepted as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011). Factual allegations must be construed "in the light most favorable to [the] plaintiff." *Adcock v. Freightliner LLC*, 550 F.3d 369, 374 (4th Cir. 2008) (quoting *Battlefield Builders, Inc. v. Swango,* 743 F.2d 1060, 1062 (4th Cir. 1984)). If the Court considers matters outside the pleadings, it must treat the motion as a motion for summary judgment. Fed. R. Civ. P. 12(d).

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. *Id.* No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322–23. On those issues on which the nonmoving party has the burden of proof, it is his responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252. In this inquiry, a court must view the facts and the reasonable inferences drawn "in the light most favorable to the party opposing the

motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252. And a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citation omitted).

      Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours & Co. v. Kolon Industries, Inc*., 637 F.3d 435, 448–49 (4th Cir. 2012). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names,* 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co*., 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56. Courts place greater weight on the need for discovery "when the relevant facts are exclusively in the control of the opposing party," such as "complex factual questions about intent and motive." *Harrods*, 302 F.3d at 244 (quoting 10B Wright, Miller & Kane, Federal Practice & Procedure § 2741, at 419 (3d ed. 1998)) (internal quotation marks omitted).

**Discussion**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally denying or delaying medical care, or intentionally interfering with prescribed medical care. *Estelle*, 429 U.S. at 104–05. Importantly, a judicial assessment of deliberate indifference has two aspects—an objective inquiry and a subjective inquiry. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

To satisfy the objective inquiry of a deliberate indifference claim, "the inmate's medical condition must be 'serious'—'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)). To satisfy the subjective inquiry of a deliberate indifference claim, the plaintiff must show that the official "knows of and disregards an excessive risk to inmate safety or health." *Farmer v Brennan,* 511 U.S. 825, 837 (1994). "Where a deliberate indifference claim is predicated on a delay in medical care . . . there is no Eighth Amendment violation unless 'the delay results in some substantial harm to the patient,' such as a 'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of

severe pain.'" *Formica v. Aylor*, 739 F.App'x 745, 755 (4th Cir. 2018) (citing *Webb v. Hamidullah*, 281 F.App'x 159, 166–67 (4th Cir. 2008)).

The parties here do not dispute that Mr. Williams's medical conditions are serious. ECF No. 12-1 at 15. However, the record clearly shows that Dr. Getachew was not responsible for Mr. Williams's primary complaint, that he was not assigned a single occupancy cell past the initial three months following his stay in the hospital and infirmary. ECF No. 13-7 at 67 and 79 (medical records showing Nurse Practitioner Hoover and Dr. Mehta denying Mr. Williams's request for a single cell). Dr. Getachew wrote the order for Mr. Williams's single cell when he was discharged from the infirmary. ECF No. 13-8 at 39. That order was for three months. *Id*. When it expired, Mr. Williams asked other providers, namely NP Hoover and Dr. Mehta, to renew his single cell status, but they both declined, finding that it was not medically necessary. ECF No. 13-7 at 67 and 79. There is no record of Dr. Getachew making any further determination regarding single cell status beyond the initial order, nor is there any record of Mr. Williams directing any such request to Defendant. In fact, in his Motion to Dismiss or in the Alternative for Summary Judgement, Mr. Williams explains that he now understands that Dr. Getachew did not have any personal involvement in the decision not to renew his single cell status. ECF No. 20 at 9; *see also id*. at 6-8 (Mr. Williams explains his confusion regarding how Dr. Getachew was involved in his case, including that his name appears on many documents and that he saw him only via telehealth).

The record also shows that Dr. Getachew had no personal involvement in the decision to discontinue Mr. Williams's pain medication. Dr. Getachew prescribed Ultram for Mr. Williams's back pain on September 2, 2020. ECF No. 13-7 at 24. NP Hoover increased the dosage per Mr. Williams's request on October 12, 2020, *id*. at 4, but upon reviewing lab results showing no Ultram in Mr. Williams's system, she discontinued Ultram. *Id*. at 67. There is nothing in the record to

9

suggest that Dr. Getachew took any actions with regard to Mr. Williams's pain medication beyond writing the initial prescription on September 2, 2020. It was NP Hoover, not Dr. Getachew, who discontinued his medication.

As to Mr. Williams's hernias, Mr. Williams's demand for surgery to repair them has been met. Mr. Williams had surgery on April 20, 2021. ECF No. 13-9 at 130. Mr. Williams has repeatedly complained of hernia pain since at least May of 2019. ECF No. 13-9 at 23, 29, 36, 37, 41, and 55-57. He was issued a hernia belt on June 9, 2019 (*Iid*. at 23), but there is no indication that any action was taken to repair the hernias until after his stroke and heart surgery over a year later. There is no record of Mr. Williams discussing hernia problems with Dr. Getachew prior to September of 2020, when Dr. Getachew first referred Mr. Williams for surgery. ECF No. 13-7 at 34. Notwithstanding the nearly two-year gap between Mr. Williams's initial complaints regarding hernias and the surgery to repair them, Mr. Williams does not state any facts or make any allegations regarding a delay in care. His entire claim consists of "I need . . . surgery for my hernia," ECF No. 1 at 7, which he has now had. ECF No. 13-9 at 130-132. Furthermore, Dr. Getachew was active in ensuring Mr. Williams eventually had the surgery he needed. ECF No. 13-7 at 87.

Viewed in the light most favorable to Mr. Williams, no genuine issue of material fact exists as to his 8th Amendment claims against Dr. Getachew. Dr. Getachew was not personally involved in the decisions to deny Mr. Williams a single occupancy cell or medication. And as to Mr. Williams's hernias, Dr. Getachew was responsible for Mr. Williams finally undergoing surgery, and there is nothing in the record to suggest that he was aware of the hernia problems prior to September 2020.

**Conclusion**

For the foregoing reasons, Dr. Getachew's Motion for Summary Judgement will be GRANTED. Mr. Williams's Motion to Dismiss or in the alternative for Summary Judgment, and his Motion for Judgment on the Pleadings will be DENIED. Mr. Williams will be granted leave to file an amended complaint that identifies the unnamed defendant "medical personnel" and outlining any claims against them. A separate order follows.

 03/15/2022_____        \_\_\_\_/S/_____
Date                                              Paul W. Grimm
                                                  United States District Judge